761 So.2d 20 (2000)
Angela ARBON, Judy Mackles and State Farm and Casualty
v.
Dr. Clayton CHARBONNET, D.D.S.
v.
Dayton Corporation, W.W. Granger, Inc., Meer Dental Supply and Wausau Insurance Company.
No. 99-CA-852.
Court of Appeal of Louisiana, Fifth Circuit.
January 25, 2000.
Writ Denied April 20, 2000.
*22 Conrad Meyer, IV, Baldwin & Haspel, L.L.C., New Orleans, Louisiana, Attorney for Appellant Dr. Clayton Charbonnet, D.D.S.
J. Dwight LeBlanc, III, Frilot, Partridge, Kohnke & Clements, L.L.C., New Orleans, Louisiana, Attorney for Appellee W.W. Grainger, Inc.
Kenneth B. Krobert, Metairie, Louisiana, Attorney for Appellee Meer Dental Supply and Wausau Ins. Co.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and CLARENCE E. McMANUS.
CANNELLA, Judge.
Defendant/third party plaintiff, Dr. Clayton Charbonnet, appeals from two trial court judgments rendered against him and in favor of third party defendant, W.W. Grainger, Inc. (Grainger), granting an involuntary dismissal and in favor of third party defendants, H.P. Meer Dental Supply Company (Meer) and Wausau Insurance Company (Wausau), dismissing them from the action. For the reasons which follow we affirm in part, reverse in part and render.
In 1986, Dr. Charbonnet, an orthodontist, purchased an office at 5036 Yale Street, Metairie, Louisiana. When he originally purchased the building, he hired an architect and dental supplier, a predecessor to Meer, to design and construct his part of the building on the third floor where he would conduct his orthodontic practice. A water piping system was designed for the office, with a solenoid and valve, which permitted the water supply to the office to be turned off by a wall switch located near the exit door of the office. In addition to the solenoid and valve, a water filter was included in the system. The system worked for approximately a year and a half before the solenoid and valve ceased to function.
When the predecessor dental supply company closed its business, Dr. Charbonnet began using Meer to purchase and service equipment in his office. In November of 1993, when a Meer service technician was on a call at Dr. Charbonnet's office concerning x-ray equipment, the technician informed Dr. Charbonnet that he could replace the solenoid and valve and get the system working again. Dr. Charbonnet gave his approval. The new solenoid and valve were ordered. On December 15, 1993, the Meer technician installed a new solenoid and valve for Dr. Charbonnet's water system. After installing the new solenoid and valve, the system was tested. When the switch was turned off, the solenoid operated properly and cut off the water supply to the office. Dr. Charbonnet and his office assistant testified that it was the office practice that the last person leaving in the evening flipped the switch off to turn off the water.[1]
Within two months after the installation by the Meer service technician, Dr. Charbonnet's second floor tenant, Angela Arbon, a plaintiff in this action, complained about a hammering noise in the piping. Dr. Charbonnet called Meer who sent a technician out on February 21, 1994 to check the system. After checking the system, the Meer technician reported to Dr. Charbonnet that the system was fine and that he could continue using it. Dr. Charbonnet inquired as to whether he should bypass the valve as he had before and the Meer technician told him that it was not necessary. On the evening of February 22, 1994 or the early morning of February *23 23, 1994, a pipe in Dr. Charbonnet's office ruptured, flooding his office and the offices below which were occupied by State Farm Insurance Agents, Angela Arbon and Judy Mackles, plaintiffs herein.
Plaintiffs filed suit against Dr. Charbonnet, as owner of the building and the person responsible for the flooding of their offices. Dr. Charbonnet third-partied Grainger, the manufacturer of the solenoid and valve, and Meer, the installer and service provider of the solenoid and valve. Dr. Charbonnet contends that either debris in the water prevented the solenoid valve from closing or the valve malfunctioned. He further contends that the Grainger product literature did not adequately advise that a water filter should be placed upstream of the solenoid valve to prevent this type of damage. Dr. Charbonnet also contends that Meer failed to follow the few manufacturer's instructions and warnings and negligently installed the solenoid valve improperly, without warning Dr. Charbonnet of the potential dangers in the use of the solenoid valve, i.e. that it might not close off the water supply.
Grainger argued in response that the installation and operating instructions that came with the solenoid valve were adequate but were simply not followed. The instructions warned that foreign matter could cause the valve to leak or stick open. It was also provided that the valve was not to be used as a safety shut off valve.
Meer admitted to receiving, reading and understanding the Grainger instructions. However, Meer's position was that their duty extended no further than simply replacing the existing nonfunctional valve with a new one and they were not responsible for the design of the system, with the filter downstream of the solenoid valve, such that it did not prevent foreign matter from interfering with the closing of the value.
Following a judge trial, the trial court rendered judgment in favor of plaintiffs against Dr. Charbonnet. However, the trial court ruled against the plaintiffs and Dr. Charbonnet in favor of Grainger on August 11, 1998 and Meer on August 21, 1998, dismissing them both. It is from these judgments that Dr. Charbonnet appeals.[2]
On appeal Dr. Charbonnet argues that the trial court erred in dismissing both Grainger and Meer. He argues that the trial court erred in not finding Grainger strictly liable for manufacturing defects, finding that the valve was not defective even though it malfunctioned within about two months of installation, and/or finding that the warnings accompanying the valve were adequate even though they were not attached to the valve and not specific enough about the need for a filter upstream from the valve. Further, he argues that the trial court erred in releasing Meer from all liability by finding that they were not negligent in the manner in which they repaired the system or in their failure to heed and advise Dr. Charbonnet of the warnings accompanying the valve.

STRICT LIABILITY OF GRAINGER
Grainger contends that the trial court was correct in its findings that the evidence did not establish that the valve had a manufacturing defect or that the warnings contained in its installation and operating instructions were inadequate.
The Louisiana Products Liability Act (LPLA), La. R.S. 9:2800.51, et seq. provides the exclusive theory of liability for manufacturers and their products. Specifically, the LPLA establishes four theories by which a product may be deemed defective and the manufacturer held responsible, namely, defective construction, defective design, inadequate warning and nonconformity with warranties. La. R.S. *24 9:2800.54(B)(1-5). Dr. Charbonnet asserted Grainger's liability based on defective construction and inadequate warnings.
In reaching judgment in favor of Grainger, the trial court found that the evidence was not sufficient to prove that the solenoid valve was defective. Whether a product is defective is a question of fact. Hines v. Remington Arms Co., Inc., 94-0455 (La.12/8/94), 648 So.2d 331.
The standard of review on appeal of factual findings of the trial court on a motion for involuntary dismissal is whether the trial court committed manifest error. Catalano v. Roberts, 94-635 (La.App. 5th Cir. 1/18/95), 650 So.2d 330. The issue to be resolved is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State through DOTD, 617 So.2d 880 (La.1993); Labit v. D.H. Holmes Co., Ltd., 98-238 (La.App. 5th Cir. 10/14/98), 721 So.2d 933.
In the instant case, there was no error, manifest or otherwise, in the trial court finding that the evidence did not establish that the solenoid valve was defective. Virtually every time the valve was tested or examined, with the exception of examination by Meer's expert, Charles Pruitt (Pruitt), the valve operated properly. In Pruitt's examination of the valve, he determined that the diaphragm was sticking to the top of the valve and not closing properly. However, Pruitt's findings were explained by the Grainger expert, Jude Pauli (Pauli). He explained that Pruitt's tests showed the diaphragm sticking to the top of the valve because Pruitt did not have water running through the valve when he tested it. He only had it connected to electricity. The valve does not function properly without some kind of pressure, either air or water, running through it. Pauli explained that without the pressure from either air or water the diaphragm would stick to the top of the valve. Thus, Pauli opined that Pruitt's tests, which showed the valve was sticking, were faulty because they were conducted without the water pressure running through the valve at the time of the tests. Further, plaintiffs' expert, Jim Moore (Moore), testified that the valve functioned properly in his tests except when foreign particles were introduced into the valve, then the valve remained open when it should have closed. It was Moore's opinion that the valve did not close because foreign particles had gotten into the valve and not because it was inherently defective. Furthermore, following the flooding incident, when Dr. Charbonnet cleaned the water filter, he found what appeared to be shell fragments in the water filter.
Therefore, based on our review of the record we find no error in the trial court finding that plaintiffs and Dr. Charbonnet failed to prove, by a preponderance of the evidence, that the valve was defective.
The trial court also found that the warnings in the Grainger product literature that accompanied the valve were adequate. The installation and operating instructions contained the following pertinent warnings:
Foreign matter in the valve may result in seat leakage, sticking open or closed, or coil burn out.
Do not utilize solenoid valve as the safety shut-off.
Installation where property damage and/or personal injury might result requires further installation of backup system.
Dr. Charbonnet argues that the warnings were inadequate because they were not more prominently placed on the valve and that the instructions lacked specificity because they did not expressly advise to place a water filter upstream from the valve.
La. R.S. 9:2800.57, addressing adequate warnings, provides in pertinent part:
A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the *25 time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.
The testimony adduced at trial indicates that the Meer technician who installed the valve was well aware of the warnings and understood them in relation to the system with which he was dealing. He testified that he knew the instructions directed that the valve was not to be used as a safety shut-off valve and that he also knew that it was being used as a safety shut-off valve in the configuration of Dr. Charbonnet's system. Further, the technician testified that he knew and understood that foreign substances might cause the valve to malfunction and he was aware that the water filter in Dr. Charbonnet's system was downstream of the solenoid valve which would allow foreign particles to flow through the valve. Moreover, the expert witnesses testified that the instructions and warning accompanying the valve were adequate.
The product (valve) possessed the characteristic that it might not function properly if foreign particles were introduced into it. The warnings expressly advised of that characteristic and advised that the valve not be used as a safety shut-off. The technician installing the valve testified that he read and understood the warnings. Based on the foregoing, we find no error in the trial court finding that the instructions and warnings accompanying the solenoid and valve were adequate.
Accordingly, we find no error in the trial court finding that Grainger was not liable under the LPLA.

NEGLIGENCE OF MEER
In order to determine whether liability exists under the facts of a particular negligence case, a duty-risk analysis must be undertaken. Under this analysis, it must be determined whether plaintiff established, by a preponderance of the evidence, that:
(1) the conduct in question was the cause-in-fact of the resulting harm;
(2) defendant owed a duty of care to plaintiff;
(3) the requisite duty was breached by defendant; and
(4) the risk of harm was within the scope of protection afforded by the duty breached.
Stroik v. Ponseti, 96-2897 (La.9/9/97), 699 So.2d 1072. Under the duty risk analysis, all four inquiries must be answered affirmatively for plaintiff to recover on a negligence theory. Stroik, supra.
In the instant case, we find that Meer owed a duty to Dr. Charbonnet to perform the work that it volunteered to perform, getting the shut-off system to the water supply working again, in a competent and skillful manner and it breached that duty by not following the operation and installation instructions and warnings accompanying the solenoid and valve, by installing it contrary to those instructions and warnings and by taking the instructions and not advising Dr. Charbonnet of the problem. This breach was a cause of the flooding in Dr. Charbonnet's office and the offices below his, which was exactly what was to be prevented by making the shut-off system operational again.
The Meer technician was in Dr. Charbonnet's office on a call concerning x-ray equipment. During that visit, he noticed that the shut-off system for the water supply in Dr. Charbonnet's office was not operational. He informed Dr. Charbonnet that he could get the system working again. He attempted to do this by replacing the solenoid and valve. He ordered a new solenoid and valve from Grainger. That solenoid and valve came with operating and installation instructions that included the warning that it not be used as the safety shut-off valve and that foreign particles running through the valve could cause the valve to not close. The Meer *26 technician testified that he read these instructions and understood them. Nevertheless, he installed the solenoid and valve as the safety shut-off valve for the water supply and installed it upstream from the water filter which allowed foreign particles from the water to run through the valve. Moreover, Dr. Charbonnet was never shown or given the instructions or warnings regarding the use of the solenoid valve, nor did the Meer technician tell Dr. Charbonnet that it should not be used as the safety shut-off and that, with the water filter downstream, foreign particles could enter the valve causing the valve to malfunction and not shut off the water.
Meer argues, and the trial court was persuaded, that because Meer did not design the system with the water filter downstream from the valve, it should not be held liable for the faulty design. While we are aware that Meer did not design the shut-off system with the water filter downstream instead of upstream, we disagree with the conclusion of the trial judge that this fact precludes any degree of liability on the part of Meer. Rather, we find that when Meer undertook to make the shutoff system operational by merely replacing the solenoid valve with another in a manner contrary to the accompanying instructions and warnings and without notifying Dr. Charbonnet of the problem, it inserted itself into the equation of fault when the system malfunctioned by not shutting off the water supply. Therefore, we find that the trial court was clearly wrong in assigning Meer no portion of the fault for the damages sustained in this case.
Once an appellate court finds that the lower court erred in apportioning fault, it must adjust the allocation of fault, but only to the extent of lowering or raising it to the highest or lowest point respectively which was reasonably within the trial court's discretion. Clement v. Frey, 95-1119 (La.1/16/96), 666 So.2d 607. The trier of fact is owed some deference in its allocation of fault. Clement, supra.
In this case the trial court determined that no fault existed on the part of Meer. As explained above, we find that determination to be clearly wrong. In raising the allocation of fault to the highest point within the trial court's discretion based on the evidence in the record, we find that Meer is responsible for 33% of the fault in causing the damages sustained.
The system was improperly designed for its intended purpose as the safety shut-off for the water supply in the office by a former company not a party to this suit, with the water filter downstream from the shut off valve. The extent to which Dr. Charbonnet, as owner of the building, knew or should have known of the defects or problems with his system are not clear. As third party plaintiff, however, it was his burden to prove the liability of Meer by a preponderance of the evidence. The record supports a finding that Meer was partially liable for the damages sustained when it undertook the repair of the shut-off system, which was admittedly defective in design and knowingly did the repair in a manner contrary to the instructions and warnings of the valve it replaced without warning to Dr. Charbonnet. As such, we find Dr. Charbonnet has proven that Meer could have been at least 50% at fault but no less that 33%. Giving deference to the trial court finding of no liability, we find that the highest point to which we can reasonably raise the fault allocation of Meer is to 33%.
Accordingly, for the reasons set forth above, the trial court judgment dismissing Grainger is affirmed. The judgment dismissing Meer and Wausau from the case is reversed and we render judgment to hold Meer and Wausau 33% at fault in causing the damages to plaintiff for which Dr. Charbonnet has been held liable. All other portions of the judgment of the trial court are affirmed. Costs of appeal are assessed against Meer and Wausau.
*27 AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
NOTES
[1] The evidence was uncontradicted, and there is no argument on appeal to the contrary, that the switch to close the solenoid and valve were turned off on the night in question. The switch to turn off the water was in a three switch lighted panel with the compressor and vacuum. All three were allegedly turned off each night. When the office assistant arrived the next morning and checked the switches, they were off.
[2] Although plaintiffs had also asserted claims against Grainger and Meer which were also dismissed by the trial court, plaintiffs appear to be satisfied with their judgment against Dr. Charbonnet and have not appealed the trial court judgments in favor of Grainger and Meer.