I LAUNDERS, J.
I respectfully dissent. The danger of death by suffocation because of the flowing characteristic of the rice was not obvious to an ordinary user. Because this danger was not obvious to the ordinary user, but known to Wilson Trailer, Wilson Trailer should have posted same warning on its gravity drain trailer.
In order for the plaintiff to recover under the Louisiana Products Liability Act (LPLA) against a manufacturer, the plaintiff must show that:
[His] damage [was] proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.
*1180 La.R.S. 9:2800.54(A). A reasonably anticipated use is defined in the LPLA as “a use or handling of a product that the product’s manufacturer should reasonably expect of an ordinary person in the same or similar circumstances.” La.R.S. 9:2800.53(7). An example of a reasonably anticipated use is presented in Dunne v. Wal-Mart Stores, Inc., 95-2047 (La.App. 1 Cir. 9/10/96); 679 So.2d 1034. In Dunne, the plaintiff appealed her action under the LPLA asserting that the trial court erred in finding that the use of a stationary exercise bicycle, the Aero Cycle, by a person who was significantly overweight was not a reasonably anticipated use of that product. Id. In reviewing the facts of that case, the first circuit noted that the plaintiff had used the exercise bike in a manner “wholly consistent with its intended use.” Id. at 1037. The Lexercise bike had been marketed and designed by the manufacturer for use by overweight individuals, therefore, use by the plaintiff in the instant .case was a reasonably anticipated use. Id.
Likewise, in Hooker v. Super Products Corp., 98-1107 (La.App. 5 Cir. 6/30/99); 751 So.2d 889, unit denied, 99-2947 (La.12/17/99); 751 So.2d 884, writ denied, 99-2911 (La.12/17/99); 751 So.2d 880, the fifth circuit found that a public works employee’s action in attempting to guide a sewer hose to make it feed properly onto a reel mounted behind the cab of his truck was a reasonably anticipated use under the LPLA. In that instance, the plaintiff had operated a sewer clean out truck for ten years and customarily stood near the hose while he performed his work. Id. The plaintiff in that case had to guide the hose into manholes by hand then back onto the reel by hand when he pulled it out of the sewer. Id. Under this set of facts, the fifth circuit recognized that “[t]here was nothing in the evidence to suggest that an ordinary user, such as plaintiff, would not, under similar circumstances, climb onto the truck to guide the hose onto the reel, since the hose does not have a guide system.” Id. at 904. Therefore, the fifth circuit concluded that the plaintiffs action in insuring that the hose fed properly by attempting to guide it was a reasonably anticipated use under the LPLA. Id.
In support of the judgment of the trial court, Wilson Trailer cites Myers v. American Seating Co., 93,1350 (La.App. 1 Cir. 5/20/94); 637 So.2d 771, writ denied, 94-1569 (La.10/7/94), 644 So.2d 631, writ denied, 94-1633 (La.10/7/94), 644 So.2d 632, for the proposition that Lenis was not making a reasonably anticipated use of its trailer at the time of his accident. In Myers, the first circuit reviewed an action brought under the LPLA which was prompted by injuries the plaintiff received when Lshe used a folding chair as a step ladder. Id. The first circuit found that the manner in which the plaintiff used the chair was not a reasonably anticipated use. Id. The first circuit concluded:
The evidence shows that, in a reasonably anticipated use, the 54-folder performed in the manner a folding chair should perform. Only when used in the manner Carole Myers used the chair, namely standing on the rear portion of the chair seat, would the chair jackknife. Although this use may be a conceivable use, it is not a reasonably anticipated use. Most people who use a folding chair as a stepladder utilize the front portion of the seat upon which to stand. Moreover, of the more than five million 54-folders manufactured by American Seating, only one other incident occurred involving a folding chair.
Id. at 779.
I find the facts of the instant case to be more closely aligned with those of Hooker than those of Myers. In the instant case, a large part of the debate at the trial level *1181 hinged on whether riding or standing on top of the loaded grain trailer was a reasonably anticipated use. The evidence produced at trial establishes that the entry of persons into the interior of the trailer was a use reasonably anticipated by the manufacturer. Mr. Herpin’s testimony at trial reveals that there were ladders on the trailer to assist in entering the trailer’s two hoppers. In addition, Mr. Herpin testified that he expected Lenis and the boys to-enter the hopper after the gravity drain had been used to remove the bulk of the rice from the trailer in order to clear any remaining rice. For Lenis and the boys to successfully complete their labor, they necessarily had to enter into the bed of the gravity drain trailer at some point during the process. No warning was posted on the trailer to indicate to them at which point it would be unsafe to do so.
In addition, riding or standing upon a fully loaded trailer such as this one is a | ¿reasonably foreseeable use. While Wilson Trailer clearly contemplated that this trailer would be used primarily to haul grain, it must have also considered that a trailer may be used as a means of transportation of persons as well. Mr. Herpin’s testimony indicated that he often allowed the boys to ride on the grain trailer when traveling from the fields to the grain storage facility. Therefore, I would find that the trailer was being used as reasonably anticipated at the time the accident occurred.
Under the LPLA,
A product is unreasonably dangerous if and only if:
[[Image here]]
(3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57[.]
La.R.S. 9:2800.54(B). The plaintiff bears the burden of proving that the product is unreasonably dangerous because of the manufacturer’s failure to warn. See La. R.S. 9:2800.54(D). Although the LPLA imposes liability on manufacturers for failure to adequately warn, there are instances in which a manufacturer does not have to provide an adequate warning. La.R.S. 9:2800.57(A). La.R.S. 9:2800.57(B) provides:
A manufacturer is not required to provide an adequate warning about his product when:
(1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product’s characteristics; or
(2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.
Whether a product is unreasonably dangerous, therefore defective, is a question | .qof fact for the fact finder. Hines v. Remington Arms Co., 94-0455 (La.12/8/94); 648 So.2d 331. Here, the trial judge committed manifest error when she granted Wilson Trailer’s motion for involuntary dismissal at the close of Rachel’s case.
The evidence produced at trial clearly establishes that Lenis did not know and should not have known of the danger of suffocation posed by the gravity drain trailer. Mr. Herpin’s testimony shows that Lenis had been employed as a truck driver trainee for only seven days when the accident occurred. Mr. Herpin’s testimony also indicates that Lenis was inexperienced as a truck driver; he testified that he wanted “to kind of train him a little bit to go' on the road.” He also testified that he had not yet allowed Lenis to drive the *1182 truck on contract deliveries for his customers. Finally, although Rachel testified that her husband had worked for Liberty Rice Mill, her testimony reflected that his job did not involve the use of gravity drain trailers. At Liberty Rice Mill, Lenis worked in the milling department. Lenis was responsible for loading bags of rice on pallets and then loading the pallets onto a flatbed truck. At no point, had Lenis ever been responsible for unloading gravity drain trailers at Liberty Rice Mill.
In addition, Mr. Herpin, Lenis’ employer, testified that he was unaware of the danger of suffocation that the gravity drain trailer posed. Mr. Herpin testified that had he known of the possibility that someone could get caught in a flow of rice and suffocate during the unloading of the trailer, he would not have allowed the boys to stay on the rice while it was unloading. Further, Mr. Herpin testified that he had not felt that the trailer posed such a danger because he stated that “[rice] dumps too slowly at this facility.” In addition, Mr. Herpin testified that there were no specific warnings located on the trailer as to the possible risk of suffocation in grain or the flowing of | figrain at the time of the accident. In fact, Mr. Herpin testified that there were no warning signs of any kind on the trailer.
Furthermore, Mr. Michael Joseph Fren-zel, Rachel’s witness, was allowed by the court to testify generally about how some warnings are used for control. Mr. Fren-zel testified that at the time the gravity drain trailer was manufactured by Wilson Trailers, the potential of “drowning” in grain contained in a silo or a trailer was a known agricultural danger. Mr. Frenzel also testified that certain people, especially children and adults with no prior knowledge, were not capable of appreciating such a hazard. Finally, he testified that, “[t]he suffocation phenomenon is not the common body of knowledge. You learn that through experience. But [Lenis] had no experience with which to know that. And he was not told that ... Mr. Herpin had no experience with which to warn him of that, because he had never seen that before.” We know from his own testimony and from his actions in allowing his children to ride in the trailer that Mr. Herpin, an experienced farmer, was unaware of the suffocation phenomenon. Knowing this I cannot agree with the ruling that attributes knowledge to an inexperienced employee that was not possessed by his far more experienced employer.
Accordingly, I would have found that the trial court erred in finding that Lenis knew or should have known of the dangers of drowning in the gravity drain trailer thereby making a warning unnecessary. Thus, I would have reversed the decision of the trial court and remanded this matter for further proceedings.