877 So.2d 970 (2004)
Raleigh LANDRY and Clailee Aucoin Landry
v.
AVONDALE INDUSTRIES, INC., et al.
Nos. 2003-CC-3432, 2003-CC-3434, 2003-CC-3435.
Supreme Court of Louisiana.
July 2, 2004.
*971 Stephen N. Elliott, Robert A. Knight, Francine M. Giugno, Bernard, Cassisa, Elliott & Davis, Metairie, Counsel for Applicant.
Dana D. Anderson-Carson, Gary M. Zwain, Geoffrey P. Clement, Duplass, Zwain, Bourgeois & Morton, Metairie; Gary A. Lee, Johanna G. King, Richard M. Perles, Lee, Futrell & Perles, New Orleans; Andrew L. Plauche, Jr., Wendy K. Lappenga, Kenan S. Rand, Jr., Plauche, Maselli, Landry & Parkerson, New Orleans; Troy N. Bell, Maria C. Pardo, Jeanette Seraile-Riggins, Glenn L. M. Swetman, John E. Unsworth, III, Aultman, Tyner, Ruffin & Yarborough, Hattiesburg, MS; Charles V. Giordano, Miranda, Warwick, Milazzo, Giordano & Hebbler, Metairie; Gerolyn P. Roussel, Roussel & Roussel, LaPlace; David S. Bland, King, LeBlanc & Bland, New Orleans; Lynn M. Luker; Arthur W. Stout, III, Deutsch, Kerrigan & Stiles, New Orleans; Susan B. Kohn, Simon, Peragine, Smith & Redfearn, New Orleans; Brian C. Bossier, Blue Williams, Mandeville; Christopher K. Lightfoot, Valerie T. Schexnayder, Hailey, Mcnamara, Hall, Larmann & Papale, Metairie; Samuel M. Rosamond, III, Crawford & Lewis, Baton Rouge; Lawrence G. Pugh, III, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans; Larry G. Canada, Galloway, Johnson, Tompkins, Burr & Smith, New Orleans; Gregory E. Bodin, Taylor, Porter, Brooks & Phillips, Baton Rouge; E. Scott Hackenberg, Henchy, Verbos, Futrell & Foil; Gordon P. Wilson, Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, New Orleans; Walton S. Brown, Taggart, Morton, Ogden, Staub, Rougelot & O'Brien; James F. d'Entremont, Phelps Dunbar, New Orleans; Laurie J. Hutchings, Rebecca K. Jude, Jude & Associates, Hattiesburg; John B. Edwards, II, Dogan & Wilkinson; John D. Cosmich, Dawn Fulce, Forman, Perry, Watkins & *972 Tardy; Scott P. Yount, Preston & Cowan; Counsel for Respondent.
WEIMER, Justice.
We granted certiorari to resolve the narrow issue of whether the provisions of the Louisiana Comparative Fault Law, enacted by Act 431 of 1979 and effective August 1, 1980, apply to a wrongful death action commenced after the decedent's demise in November 2002, from mesothelioma allegedly contracted as a result of exposure to asbestos at various time periods from 1959 to 1974. Answering that inquiry in the affirmative, we hold that Act 431 of 1979 operates prospectively, applying to claims arising from events occurring after its August 1, 1980 effective date, and that the key relevant event giving rise to a claim for wrongful death for purposes of applying the comparative fault law is the victim's death. Since the decedent in this case died in 2002, long after the effective date of Act 431, we conclude that Louisiana's Comparative Fault Law applies to the plaintiffs' wrongful death claim. The judgment of the court of appeal holding to the contrary is reversed. The district court's judgment is reinstated.

FACTS AND PROCEDURAL HISTORY
Raleigh Landry worked for Avondale Industries from 1965 to 1967 and for McDermott, Inc., from 1959 to 1961, 1964 to 1965, and 1973 to 1974. During the course of these employments, he was allegedly exposed to asbestos which resulted in his contraction of mesothelioma. On March 28, 2002, Mr. Landry and his wife, Clailee Landry, filed suit against Avondale and its executive officers, McDermott and its executive officers, and several manufacturers and/or distributors of asbestos products for damages arising from his contraction of mesothelioma, first diagnosed in January 2002.[1]
Despite receiving an expedited jury trial setting, Mr. Landry died on November 21, 2002, before his claims could be tried. Thereafter, in a supplemental and amending petition, Jamie Landry and Glen Landry, children of Raleigh Landry, were substituted for Mr. Landry's survival damages, and, along with their mother, asserted survival and wrongful death actions which arose due to the injury and death of Raleigh Landry.
Following the appointment of a special master to hear all preliminary motions, defendant Reilly-Benton Company, Inc. and its insurer, Liberty Mutual Insurance Company, filed a motion for summary judgment asserting that the Louisiana Comparative Fault Law applies to the plaintiffs' wrongful death claims. Plaintiffs opposed the motion.
In a report to the district court dated April 30, 2003, the special master recommended that Reilly-Benton's motion for summary judgment be granted, assigning the following reasons:
Reilly-Benton moves for summary judgment ordering the case be subject to the comparative fault regime adopted in 1996, including the requirement that each person's fault be quantified. Cole v. Celotex Corp., 599 So.2d 1058 (La.1992), had held that tortious exposure in *973 diseases of long latency is subject to the law at the time of exposure, but Cole was not a wrongful death case. Plaintiff relies on the denial of writs by a panel of the 4th Circuit Court of Appeal in the Steve Dufrene case, a copy thereof is attached for ready reference. The writ was denied in June 2001. However, in September 2002 the Supreme Court authored Austin v. Abney Mills, 824 So.2d 1137 (La.2002). That case pointed out that the act adopting comparative fault in Louisiana specifically provided that the act does not apply to claims arising from "events" that occurred before the effective date of the act. In Austin the Supreme Court pointed out that the wrongful death act is designed to compensate the claimants' individual damages they suffered from the death of their relative. In Louisiana a tort involves not only substandard conduct, but also damages caused thereby. Though Austin applied to the immunity granted co-employees in the 1975-76 revision of the workers compensation law and the instant motion involves the applicability of the 1996 comparative fault regime, the principles enunciated in Austin are indistinguishable from the issue raised by Reilly-Benton's motion. Since the damages occurred at the time of death, the comparative fault provisions applicable at that time are controlling. I recommend the motion be granted.
Plaintiffs filed objections to the special master's report. An objection was also filed on behalf of Peter Territo, Albert Bossier, Jr., Edward Blanchard, and J. Melton Garrett, executive officers of Avondale named as defendants in plaintiffs' petition (hereinafter referred to as "the Avondale executive officers").
Following a contradictory hearing, the district court overruled the objections and adopted the special master's recommendation, granting Reilly-Benton's motion for summary judgment.
Both plaintiffs and the Avondale executive officers applied for supervisory writs from the district court's ruling. The applications were consolidated in the court of appeal. On September 17, 2003, the court of appeal granted the consolidated writ applications, reversed the district court's ruling and remanded the case for further proceedings. In rendering its decision in this matter, the court of appeal opined:
The Comparative Fault Act, La. Acts 1979, No. 431, § 4, eff. Aug. 1, 1980, provides in pertinent part: "The provisions of this act shall not apply to claims arising from events that occurred prior to the time this act becomes effective" [emphasis added]. The Supreme Court, in Cole v. Celotex Corp., 599 So.2d 1058 (La.1992), interpreted the term "events" to mean the incidents of exposure. As found in Cole, the expression of legislative intent evidenced by § 4 as a whole indicates that Act 431 does not apply to long-term occupational disease cases where the events ultimately causing the death of the decedent occurred prior to Act 431's effective date.
Defendant, Reilly-Benton, Inc., relies on Walls v. American Optical Corp., 98-0455 (La.9/8/99), 740 So.2d 1262, to support the proposition that in a wrongful death action the "event" is the death. However, in the case of a wrongful death action arising upon death from a long-latency occupational disease, the "events" referred to in the expression of legislative intent in Act 431, § 4 can only mean the incidents of exposure. The Supreme Court's decision in Walls is not applicable to the instant case because it involves La. R.S. 23:1032, the Louisiana Workers' Compensation Act. La. R.S. *974 23:1032 does not contain the clear expression of legislative intent found in Act 431.
The overall thrust of the statement of legislative intent in Act 431, § 4, clearly demonstrates that the legislature did not intend that Act 431 adversely affect the rights of survivors in a case, such as the instant one, where the decedent dies as a direct result of pre-Act events, i.e., significant exposure to asbestos-containing products manufactured and/or distributed by the alleged tortfeasor.
The trial court committed an error of law in finding that Comparative fault was applicable to plaintiffs' wrongful death claim.
Landry v. Avondale Industries, Inc., 03-1112, 03-1174, pp. 2-3 (La.App. 4 Cir. 9/17/03), 857 So.2d 1083, 1084. We granted and consolidated writ applications filed on behalf of Reilly-Benton Company, Inc., Liberty Mutual Insurance Company, Olympic Glove & Safety Equipment, Inc., and Steel Grip, Inc., to consider the correctness of the court of appeal's ruling with respect to the application of comparative fault principles in this wrongful death action. Landry v. Avondale Industries, Inc., 03-3432 (La.3/19/04), 869 So.2d 837, c/w 03-3434 c/w 03-3435 (La.3/19/04), 869 So.2d 833. Our review of the summary judgment, and the legal issue raised therein, is de novo. Schroeder v. Bd. of Sup'rs of La. State Univ., 591 So.2d 342, 345 (La.1992) ("Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate.").

LAW AND DISCUSSION
As noted, the sole issue presented for our review is whether the provisions of the Louisiana Comparative Fault Law, which was enacted by Act 431 of 1979 and which became effective on August 1, 1980, apply to the instant wrongful death action commenced after the Act's effective date. The resolution of this issue is complicated by the factual context in which it arises: the decedent died from mesothelioma allegedly caused by occupational asbestos exposure predating the Act's effective date. While we have previously acknowledged and documented the difficulties associated with actions for damages caused by long-latency diseases, such as asbestosis and mesothelioma, and the unique problems encountered in attempting to fit such actions within the framework of concepts designed to handle traditional torts,[2] *975 we find that in the instant case we do not write on a clean slate and that the resolution of the narrow issue presented is presaged by our earlier decisions in Cole v. Celotex Corp., 599 So.2d 1058 (La.1992) and Walls v. American Optical Corp., 98-0455 (La.9/8/99), 740 So.2d 1262.
Act 431 of 1979 amended and reenacted LSA-C.C. arts. 2103, 2323, and 2324 to usher a comparative fault system into Louisiana. This act eliminated the doctrine of contributory negligence and provided the framework for a comprehensive scheme of loss apportionment in multi  party litigation. Keith v. U.S. Fidelity & Guar. Co., 96-2075 (La.5/9/97), 694 So.2d 180, 183.[3] As enacted, Act 431 contains a clear expression of legislative intent regarding its application. Section 4 of the Act states: "The provisions of this act shall not apply to claims arising from events that occurred prior to the time this act becomes effective." Section 7 provides: "The provisions of this Act shall become effective on August 1, 1980."
In the landmark case of Cole v. Celotex Corp., supra, we were asked to determine the applicability of Act 431 to a claim for damages caused by long-term exposure to asbestos in the workplace. Cole involved the direct tort claims of three employees suffering from injuries caused by occupational exposure to asbestos. After the exposures, but before the plaintiffs filed suit, the comparative fault law became effective, via Act 431. In determining whether the provisions of that law could be applied to the plaintiffs' suit, we first noted that LSA-C.C. art. 6 supplies the governing rule of statutory construction with respect to the temporal application of statutes.[4] We explained:
LSA-C.C. Art. 6 requires that we engage in a two-fold inquiry. First, we must ascertain whether in the enactment the legislature expressed its intent regarding retrospective or prospective application. If the legislature did so, our inquiry is at an end. If the legislature did not, we must classify the enactment as substantive, procedural, or interpretive. See Lavespere v. Niagara *976 Machine & Tool Works, Inc., 910 F.2d 167, 182 (5th Cir.), reh'g denied, 920 F.2d 259 (5th Cir.1990), citing Ardoin v. Hartford Accident & Indem., Co., 360 So.2d 1331, 1338-39 (La.1978).
Cole, 599 So.2d at 1063.
Recognizing that Act 431 contains a "clear and unmistakable expression of legislative intent regarding prospective application," Cole, 599 So.2d at 1064  Section 4 of the Act providing that "[t]he provisions of this act shall not apply to claims arising from events that occurred prior to the time this act becomes effective," and Section 7 directing that "[t]he provisions of this Act shall become effective on August 1, 1980"  we hinged our decision in Cole on the unique language in Act 431 and the legislative intent expressed therein. Our decision turned on an interpretation of what the legislature intended when it directed that the provisions of this act shall not apply to claims arising from "events" that occurred prior to August 1, 1980.
In discussing the meaning of "events" as used in Act 431, we noted that in the context of traditional torts, Louisiana courts have equated the term "events" contained in Act 431 with "accident" and "injury," reasoning that when the accident and injury occurred before the Act's effective date, pre-Act law applies. Cole, 599 So.2d at 1065 (citing McDermott v. Jester, 466 So.2d 795 (La.App. 4th Cir.), writ denied, 468 So.2d 576 (La.1985)). We did not disapprove of such reasoning with regard to traditional torts; instead we found that such reasoning was problematic when applied to long-latency disease cases, and therefore declined to construe the term "events" as encompassing the requisites for asserting a cause of action for damages caused by long-latency disease. Cole, 599 So.2d at 1065.
Heeding the mandate of LSA-C.C. art. 11 that the words of a statute be accorded their generally prevailing meaning, we instead equated the term "events" as used in Act 431 with "accident" or "injury producing occurrence." Cole, 599 So.2d at 1066 (citing Carroll v. International Paper Co., 175 La. 315, 143 So. 275 (1932)). We then concluded:
[T]he key relevant events giving rise to a claim in long-latency occupational disease cases are the repeated tortious exposures resulting in continuous, on-going [sic] damages, although the disease may not be considered contracted or manifested until later. We further conclude that when the tortious exposures occurring before Act 431's effective date are significant and such exposures later result in the manifestation of damages, pre-Act law applies.
Cole, 599 So.2d at 1066. Because we found that substantial injury producing exposures giving rise to plaintiffs' claims occurred before the August 1, 1980 effective date of Act 431, we ultimately held that the provisions of the Louisiana Comparative Fault Law could not be applied to plaintiffs' claims and that the case was governed by the pre-Act law of contributory negligence.
Plaintiffs and their co-respondents, the Avondale executive officers, argue that Cole governs the disposition of the instant case. They assert that Cole defines "events" for purposes of applying the Louisiana Comparative Fault Law in long-latency occupational disease cases as "repeated tortious exposures," and that this definition controls regardless of whether the later manifestation of damage takes the form of disease or death. This is essentially the position adopted by the court of appeal.
Relators counter by conceding that plaintiffs are correct in their analysis insofar as the direct tort and survival actions are concerned, but argue that a different *977 result is compelled when the claim is one for wrongful death. Relators assert that the key relevant "event" for purposes of the wrongful death action is Mr. Landry's death in 2002. As support for their position, they point to this court's decision in Walls v. American Optical Corp., supra.
In Walls, we were asked to determine whether the 1976 amendment to LSA-R.S. 23:1032, which provided for executive officer immunity, applied to a wrongful death claim where the decedent's death from silicosis, contracted as a result of occupational exposure to silica dust, occurred well after the amendment's effective date, but his exposure to the hazardous substance occurred prior to the amendment. The plaintiffs in Walls contended that Cole's exposure theory should apply to their wrongful death claim against the executive officers of the decedent's former employer, arguing that Cole requires all long-latency occupational lung disease cases to be governed by the law in effect on the date the victim was exposed to the disease causing agent.
We expressly rejected this argument, cautioning that "Cole should not be read so expansively." Walls, 98-0455 at 10, 740 So.2d at 1270. In doing so, we explained that Cole involved a direct tort action, which, like all other actions, accrues upon the existence of both wrongful conduct and an injury. In long-latency disease cases, where the relevant injury is the victim's disease, determining the exact moment of injury is virtually impossible. This difficulty is the foundation of the exposure theory. Id. However, we recognized that a different situation exists when the cause of action is one for wrongful death. We explained:
While we acknowledge the factual similarities between Cole and the instant case, we find the distinguishing factors dispositive, and reject the plaintiffs' contention that Cole's "tortious exposure doctrine" applies to determine the applicable law in the instant case.
Walls, 98-1455 at 11, 740 So.2d at 1271. Noting that our decision in Cole turned on unique language in Act 431 not present in the amendment to LSA-R.S. 23:1032, we expressly rejected the plaintiffs' contention that "because the pivotal `events' giving rise to their wrongful death claims were defendants' pre-1976 conduct exposing Mr. Walls to silica dust, Cole requires the application of the pre-amendment law." Walls, 98-0455 at 12, 740 So.2d at 1272.
After distinguishing Cole on the ground that the 1976 amendment to LSA-R.S. 23:1032 was not at issue in that case, which turned on the distinct language of Act 431 and the legislative intent expressed therein, we explained:
[T]he instant case does not involve a direct tort action or a survival action, such as gave rise to Cole, but instead presents an action for wrongful death. In Louisiana, it is well established that the survival action and the wrongful death action are two different causes of action that arise at different times.
Walls, 98-0455 at 14, 740 So.2d at 1273. We then reaffirmed our holdings in Taylor v. Giddens, 618 So.2d 834 (La.1993) and Guidry v. Theriot, 377 So.2d 319 (La.1979), cataloging the distinctions between the survival action and the wrongful death action.
Although both actions arise from a common tort, survival and wrongful death actions are separate and distinct. Each right arises at a different time and addresses itself to the recovery of damages for totally different injuries and losses. The survival action comes into existence simultaneously with the existence of the tort and is transmitted to beneficiaries upon the victim's death and permits recovery only for the damages *978 suffered by the victim from the time of injury to the moment of death. It is in the nature of a succession right. On the other hand, the wrongful death action does not arise until the victim dies and it compensates the beneficiaries for their own injuries which they suffer from the moment of the victim's death and thereafter. Wrongful death damages compensate beneficiaries for their own injuries.
Walls, 98-0455 at 14, 740 So.2d at 1273, quoting Taylor v. Giddens, 618 So.2d 834, 840 (La.1993) (internal citations omitted). Because the survival action and the wrongful death action are totally separate and distinct causes of action that arise at different times and allow recovery of completely different damages, we concluded that although "Cole established the `exposure theory' for determining the applicable law within the context of the direct tort action and survival action... Cole's rationale cannot apply to the instant case involving a wholly distinct cause of action for wrongful death." Walls, 98-0455 at 14, 740 So.2d at 1273.
Recognizing the distinction between the direct tort action at issue in Cole and the wrongful death claim asserted in Walls, we ultimately held that the 1976 amendment to LSA-R.S. 23:1032, establishing executive officer immunity, operates prospectively and applies to causes of action arising after its effective date. Since plaintiffs' cause of action for wrongful death arose after the amendment's effective date, we held that the immunity conferred by the amendment barred the plaintiffs' action against the executive officer defendants and their liability insurer.
While relators argue that Walls is directly applicable and confirms that the law at the time of the alleged tortious exposure does not apply to wrongful death claims, plaintiffs and the Avondale executive officers insist that our holding in Walls cannot direct the disposition of the present case because, as we candidly acknowledged in Walls, the statute at issue in that case-LSA-R.S. 23:1032-does not contain the clear expression of legislative intent contained in Act 431. Because our decision in Walls was dictated by the date on which the plaintiffs' wrongful death cause of action accrued, and Cole declined to hinge the applicability of the Louisiana Comparative Fault Law on the date that a plaintiff's cause of action accrues, choosing instead to rely on the legislative intent as expressed in Act 431, plaintiffs and the Avondale executive officers argue that Walls does not modify Cole's holding insofar as the application of comparative fault law is concerned.
Admittedly, neither Cole nor Walls resolves the precise issue presented here. However, together they do provide a framework for determining, within the intent of Act 431, the key relevant "events" giving rise to plaintiffs' wrongful death claim for purposes of ascertaining whether the law of comparative fault applies in this case.
As we have previously noted, Cole involved a direct tort action wherein we recognized the difficulties inherent in attempting to pinpoint when a cause of action arises in a long-latency occupational disease case where the injury is the contraction of the disease. Because of these acknowledged difficulties, we declined the invitation to define the term "events" in Act 431 as synonymous with the accrual of a cause of action, and instead defined "events," a term we found to be synonymous with "accident" or "injury producing occurrence," in the context of a long-latency occupational disease as "repeated tortious exposures resulting in continuous, on-going [sic] damages." Cole, 599 So.2d at 1066. These "exposures" we recognized *979 in our recent decision in Austin v. Abney Mills, Inc., 01-1598 (La.9/4/02), 824 So.2d 1137, are not merely causative, but in fact include a corresponding measure of injury or damage. Austin, 01-1598 at 25, 824 So.2d at 1154.[5]
Walls admittedly did not address the unique language in Act 431 and concerned itself solely with the date of accrual of a wrongful death cause of action. Nevertheless, Walls expressly limited Cole's exposure theory to direct tort and survival actions, reiterating and emphasizing the fundamental differences between the survival action and the wrongful death action. Most importantly, although urged to do so, this court in Walls refused to characterize the wrongful death action as a derivative action. Rather, Walls held that the wrongful death action is an independent and distinct action that arises even in the absence of a viable personal injury action by the direct tort victim and compensates the beneficiaries for their own individual injury arising out of the victim's death. Walls, 98-0455 at 15, 740 So.2d at 1274.
As Walls points out, Louisiana's wrongful death statute is clear: the relevant injuries do not occur until death, and they are not the primary victim's injuries. Because the wrongful death action is predicated on a different injury than the direct tort or the survival action, the key relevant "event" triggering that injury  death  is also logically different. Thus, while Cole declined to take the extra step and base its holding on a definition of the term "events" that would embody when a cause of action accrues, it did define "events" for purposes of Act 431 as "injury producing occurrences," recognizing that injury and damages are produced when there is significant tortious exposure, although the disease may not be considered contracted or manifested until later. While this reasoning holds true in the context of direct tort and survival actions, it is not true for wrongful death actions wherein the "injury" on which the cause of action is predicated does not arise until death. Thus, it follows and we hold that the key relevant "event" under Act 431 for purposes of applying the comparative fault law to a wrongful death claim is the death itself.
While some may bemoan the resultant disparities in the laws applying to survival and wrongful death claims, the decision continues our consistent treatment of wrongful death claims in Louisiana as distinct causes of action, and not as a secondary layer of tort liability to the primary victim. Contrary to the court of appeal's opinion, this distinction does not "adversely affect the rights of survivors in a case, such as the instant one, where the decedent dies as a direct result of pre-Act events," Landry, 03-1112, 03-1174 at 3, 857 So.2d at 1084, because the cause of action in favor of the survivors, i.e., the beneficiaries, does not arise until the victim dies. As a result, prior to the death of the victim, the beneficiaries do not have a right that can be adversely affected. Walls, 98-0455 at 9-10, 740 So.2d at 1270.

CONCLUSION
We therefore hold that Act 431 of 1979, ushering the law of comparative fault into *980 Louisiana's legal system, applies prospectively to wrongful death claims arising from "events" occurring after its August 1, 1980 effective date.[6] For purposes of Act 431, the key relevant "event" giving rise to a claim for wrongful death arising from a decedent's occupational exposure to asbestos is the death itself. Since it is not disputed that Mr. Landry died in November 2002, long after the effective date of Act 431, we conclude that the court of appeal erred in reversing the summary judgment granted by the district court and in concluding that plaintiffs' wrongful death claim is not subject to the law of comparative fault. Therefore, the decision of the court of appeal is reversed, the judgment of the district court granting summary judgment in favor of Reilly-Benton Company, Inc. and Liberty Mutual Insurance Company is reinstated, and this case is remanded to the district court for further proceedings not inconsistent with this opinion.
REVERSED; SUMMARY JUDGMENT REINSTATED; REMANDED TO DISTRICT COURT.
NOTES
[1] Among the claims asserted was a claim for loss of consortium filed on behalf of Mrs. Landry. That claim was the subject of an earlier opinion by this court, which found that because all of Mr. Landry's exposure to asbestos occurred between 1959 and 1974, before the 1982 amendment of LSA-C.C. art. 2315 to provide for loss of consortium claims, allowing the consortium claim would be an impermissible retroactive application of the amendment. Landry v. Avondale Industries, Inc., 03-0719, 03-0993, 03-1002 (La.12/3/03), 864 So.2d 117 ("Landry I").
[2] In Cole v. Celotex Corp., 599 So.2d 1058, 1065-1066 (La.1992), we explained:

The uniqueness of asbestosis cases and the difficulties of trying to fit such cases within the framework of concepts designed to handle traditional torts has been recognized: "`the factual predicate giving rise to potential liability from asbestos exposure is simply different from those that generated most tort doctrines ... [and thus such cases differ] in legally important aspects from those types of injuries that present tort doctrines were designed to accommodate.'" Ducre v. Mine Safety Appliances, 573 F.Supp. 388, 391 n. 1 (E.D.La.1983), aff'd in part and rev'd in part, 752 F.2d 976 (5th Cir.), reh'g denied, en banc, 758 F.2d 651 (5th Cir.1985) (quoting Thompson v. Johns-Manville Sales Corp., 714 F.2d 581, 583-84 (5th Cir.1983), cert. denied, 465 U.S. 1102, 104 S.Ct. 1598, 80 L.Ed.2d 129 (1984) (Goldberg, J. dissenting) and noting that "[o]ccupational diseases of the kind at hand are particularly difficult to classify pragmatically within the structured concepts of traditional tort law").
The difficulties in asbestosis cases arise because, unlike in traditional personal injury cases in which the damage results from a single, identifiable act causing traumatic injury, in asbestosis cases the damage results from a continuous process  a slow development of this hidden disease over the years. See R.J. Reynolds Tobacco Co. v. Hudson, 314 F.2d 776 (5th Cir.1963). Compounding the problem, asbestosis cases are characterized by a lengthy latency period  typically ranging a decade or two  and, consequently, a lengthy temporal separation between the tortious conduct and the appearance of injury. See Comment, Liability Insurance for Insidious Disease: Who Picks Up the Tab?, 48 Fordham L.Rev. 657, 665 n. 46 (1980). This lengthy latency period renders efforts to pinpoint the date on which the disease was contracted virtually impossible, medically and legally. Porter v. American Optical Corp., 641 F.2d 1128, 1133 (5th Cir.), cert. denied, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981), reh'g denied, 455 U.S. 1009, 102 S.Ct. 1649, 71 L.Ed.2d 878 (1982); Classen, An Investigation into the Statute of Limitations and Product Identification in Asbestos Litigation, 30 How. L.J. 1, 4 (1987). Further, this inability to pinpoint when injuries were sustained in asbestosis cases renders determining the date on which a plaintiff's cause of action accrued a herculean task.
See also, Powell v. Weaver, 01-2937 (La.2/7/03), 841 So.2d 742, 743, (Weimer, J., concurring) (noting that "[t]he factual predicates arising from insidious disease cases are simply different from those that traditional tort doctrines were designed to accommodate, and, accordingly, the courts have struggled in their efforts to create a framework that is workable and fair to both plaintiffs and defendants.").
[3] In the instant case, the significance of the comparative fault law insofar as respondents are concerned lies not in its abolition of the doctrine of contributory negligence, but in its abrogation of virile share liability.
[4] LSA-C.C. art. 6 states:

In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
[5] In Austin, we held that the test for determining when a cause of action accrues in a long-latency occupational disease case is in fact the "significant tortious exposure" theory first articulated in Cole in the context of determining the legislative intent behind Act 431. Austin, 01-1598 at 25, 824 So.2d at 1154. As a result, although Cole declined to resolve the issue of the applicability of Act 431 on the basis of when the cause of action for damages resulting from contraction of a long-latency occupational disease accrues, in the final analysis, we interpreted the legislative intent behind the statute in a manner consistent with the accrual of a cause of action.
[6] Our decision in this case does not result in a retroactive application of Act 431. Applying the two-prong test for retroactive operation formulated by Planiol, it is clear that Act 431, ushering in comparative fault, neither goes back to the past to evaluate the conditions of the legality of an act (comparative fault being an affirmative defense and not a law evaluating the conditions of the legality of the defendant's conduct) nor modifies or suppresses the effects of a right already acquired. (The cause of action for wrongful death does not arise until the victim dies; because Mr. Landry died after the effective date of Act 431, the plaintiffs did not acquire a vested right in their wrongful death cause of action prior to the effective date of Louisiana's Comparative Fault Law.") See, Walls, 98-0455 at 4-11, 740 So.2d at 1266-1270.