Conery, J.,
concurs in part, dissents in part, and assigns reasons.
|2SI concur with the majority’s opinion affirming fault at 50% to Placid Oil and 50% to Ingersoll-Rand in the survival action. I respectfully dissent from the majority’s decision to assess 100% fault to Inger-soll-Rand in the wrongful death action. The evidence is clear that Myra Williams died from mesothelioma in 2003 caused by contact with asbestos from her. husband’s work clothes while he worked for Placid Oil. I agree with the reasoning of astute counsel for Ingersoll-Rand that Mrs. Williams’ death was caused by the fault of both Ingersoll-Rand and Placid Oil. If the fault of Placid Oil was a substantial factor causing Myra Williams to contract meso-thelioma, suffer, and die for purposes of her survival action, then the trial court has already adjudicated causation and a 50% virile share reduction for purposes of the wrongful death action should be assessed as well.
I understand able counsel for plaintiffs’ argument that the wrongful death action is separate from the survival action and that for purposes of the survival action, the law that applies is the law at the time of asbestos exposure.[5] Placid Oil’s virile share in the survival action was based on strict liability under La.Civ.Code art. 2317 as the owner, of premises causing its workers to he exposed to.ultra-hazardous substances, in this case, asbestos, primarily from Mr. Williams’ exposure to asbestos in the compressor room in the mid 1970s. The law at the time 124of exposure in the 1970s had no requirement that proof of Placid Oil’s actual or constructive knowledge- of the hazard was necessary in. order to recover survival damages under La.Civ.Code art. 2317.
I also agree that the law in effect at the timé of death applies to the wrongful death action.[6] Mrs. Williams-died in 2003. Louisiana Civil Code Article 2317 was amended in 1996 to add a negligence standard requiring, in this case, proof by-a preponderance of the evidence that Placid Oil as the plant owner/operator/ employer knew or should have known of the ruin, vice, or defect which caused the damages and that Placid failed to exercise reasonable care to prevent the damage. La.Civ.Code art. 2317.1.[7] Plaintiffs specifically plead and proved at trial that Placid Oil was the owner and operator of the oil and gas refinery and processing facility in question, was the employer of Mr. Williams, and knew or should have known of the hazardous exposure of its workers to asbestos, and took no steps to warn or protect its employees and their families. Now, for the first time on appeal, plaintiffs argue that *1116 somehow Placid Oil’s virile share responsibility in the wrongful death action should be eliminated.
Mr. Williams was undeniably exposed to asbestos from Placid Oil’s compressors in Placid Oil’s compressor room where ten massive Ingersoll-Rand compressors with seventeen (17) turbo chargers insulated with asbestos were located. Yet the trial judge failed to make any specific findings or even discuss Placid Oil’s liability for wrongful death damages under La.Civ. Code art. 2317.1 as amended and in effect at the time of Mrs. Williams’ death in 2003 in its reasons for judgment, stating only, “Therefore, the Court finds that the only party at fault |25 in causing Myra Williams mesothelioma is Ingersoll-Rand. Ingersoll-Rand had a responsibility to provide adequate warnings and to recognize inherent dangers, but Inger-soll-Rand did nothing.” (Emphasis added.) This after the trial court had just found that Placid Oil was 50% at fault in causing Mrs. Williams to contract meso-thelioma and awarded Mr. Williams and the four adult children damages of $3,000,000.00 for her pre-death suffering in the survival action.
I would submit that as Mr. Williams’ employer and owner of the oil refinery and plant facilities, Placid Oil had an even greater duty than Ingersoll-Rand, who sold the compressors to Placid, to warn and protect its employees, as it clearly had direct knowledge of the hazards and dangers of asbestos exposure in the compressor room. As a “sophisticated user”[8] of the known asbestos containing components at its plant, Placid Oil knew or should have known of the potential for secondary exposure from asbestos on its employees’ work clothes, had a specific duty to warn and protect against such hazardous exposure, and did nothing.
In exonerating Placid of any liability in the wrongful death action, the majority opinion concludes, “Ingersoll-Rand failed to introduce any evidence of actual or constructive knowledge on Placid Oil’s part concerning any asbestos dangers posed by Ingersoll-Rand’s compressors to its employees.” (Emphasis added). The evidence in the record shows just the opposite. The record is replete with uncontradicted evidence of Placid Oil’s fault. Indeed, plaintiffs made specific allegations of Placid Oil’s fault and negligence in their detailed petition,[9] and then went on to introduce uncontradicted evidence at trial in support of those allegations. Almost all the evidence on this issue came from - plaintiffs’ own experts and witnesses.
|2fiAs an intermediate appellate court, our duty is to review the evidence in the entire record under the manifest error, clearly wrong standard. Hayes Fund for the First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC, 14-2592 (La. 12/8/15), 193 So.3d 1110. In Hayes, the supreme court offered clear guidance as to the role of the appellate court in a manifest error review. Great deference is to be given to the trial judge’s factual findings. We are cautioned not to re-weigh the evidence and “where there are two permissible views of the evidence, the fact finder’s choice between them cannot be clearly wrong.” Hayes, 193 So.3d at p. 1116. However, here the trial judge *1117 made no “credibility decisions,” did not “weigh the evidence,” and did not make a “conscious choice between two permissible views of the evidence” on the issue of whether Placid Oil “knew or should have known” of the asbestos exposure to its workers at its facility and failed to exercise reasonable care to protect its workers and their families, as was its duty under the law. La.Civ.Code art. 2317.1; Hayes, 193 So.3d at p. 1116. Based on a review of the entire record, I would find that the trial judge was “manifestly erroneous” and “clearly wrong” in failing to apply the un-contradicted and unrebutted evidence in the record and find that Placid Oil “knew or should have known” of the asbestos exposure to its workers, and yet failed to take any steps to protect or warn its employees and their families, specifically Jimmy Williams, Sr. and Myra Williams, his wife.
The deposition testimony of Prentiss McLeod, previously identified as a Placid Oil superintendent at the time Mr. Williams worked in Placid Oil’s compressor room in the mid 1970s, conclusively establishes that Placid Oil had knowledge that insulation around the turbo chargers on each of Ingersoll-Rand’s ten compressors contained asbestos, that each compressor had almost thirty gaskets made of asbestos, and that exposure to asbestos was hazardous. Mr. McLeodJ^testified, “Those ten engines we had in the plant, those Ingersoll-Rands, had asbestos on the turbo chargers and the exhaust piping.”
He went on to testify:
Q Okay. You said a couple of times that that was asbestos insulation.
A Yes.
Q How do you know that? I’m not saying you’re wrong—
A Right, at that time, asbestos was all you got for hot temperature. I’m talking about back in the mid to late 1960’s.
Mr. McLeod also confirmed that as early as the 1970s, Placid Oil was aware of the Occupational Safety and Health Administration (OSHA) regulations concerning asbestos exposure:
Q You were aware that OSHA has regulations for handling asbestos
A Yes.
Q When did you first become aware of that?
A Oh, at one of our safety meetings back before that addition out there. I’d say probably the late 1970’s. It might have been a little before then. It couldn’t have been much before then.
Q Was it part of your job, whatever it was, whenever you learned about the— because you’ve been Superintendent out there, whenever you learned about asbestos regulations, was part of your job to see that the workers followed these regulations?
A Right.
Q It was?
A Right. And do not touch anything with asbestos on it, you know, without proper clearance, and et cetera.
The trial judge made a specific factual finding that “Prentice McLeod was the superintendent while Mr. Williams, Sr., was a compressor operator. McLeod described the compressors as having almost thirty gaskets on each compressor that were made of asbestos.” Mr. Williams was exposed to asbestos from the asbestos | ^insulation around the turbo chargers on the compressors and was further exposed when the asbestos gaskets were changed. The trial court’s written reasons go on to state its clear factual finding that “McLeod knew that the insulation used on the compressors contained asbestos.”
Mr. Williams’ unrebutted testimony confirmed that there were seventeen (17) turbo chargers on the compressors and that *1118 the exhaust on each was insulated with asbestos. No warnings about asbestos hazards were provided to him by either Inger-soll-Rand or Placid Oil:
Q. Did anyone tell you that asbestos was hazardous?
A. Not that I remember.
Q. Either Ingersoll-Rand or Placid?
A. Neither one.
Q. Did anyone ever tell you that the uh, that when you were handling asbestos it was creating dust and that dust was hazardous?
A. No, sir.
Dr. Victor Roggli, the plaintiffs’ world renowned expert in-pathology with particular. expert knowledge of the, effect of asbestos on the human body, testified that in 1970 OSHA enacted an “emergency act” to warn everyone about the dangers of asbestos exposure. Congress enacted enabling legislation in 1971. Oil and gas refineries and facilities such as Placid Oil had a non-delegable duty to protect their employees from asbestos exposure and follow the' law as adopted by congress. Among those OSHA regulations were the requirements that employers monitor asbestos exposure and require that work clothes be segregated in order to prevent contaminated work clothes from being taken home, the exact situation which caused Mrs. Williams to contract mesothelioma from the asbestos on her husband’s work clothes.
I29Uncontradicted testimony at trial .established that Mr. Williams worked for Placid Oil from 1966-1995, and worked in the compressor room in the mid 1970s, approximately 1973-1978, with constant exposure to asbestos dust and fibers from the insulation around Ingersoll-Rand compressors. Mr. Williams, as well as several other witnesses, testified that the huge compressors vibrated and asbestos • dust from the compressors was clearly visible in the air in the area where Mr. Williams was working. In fact, one of Mr. Williams’ jobs was to sweep and clean up the dust, causing the fibers to once again become airborne, according to the uncontradicted evidence at trial. Dr. Roggli confirmed that the presence of visible asbestos fibers in the air meant that concentrations of asbestos exceeded all safety standards. Yet Placid failed completely to provide monitors, provide warnings and protect its workers. • Neither Mr. McLeod, Mr. Williams’ supervisor, nor anyone else at Placid Oil informed Mr. Williams of the dangers of asbestos exposure or the dangers of secondary 'exposure until after Mrs. Williams became ill and' was diagnosed with mesothelioma.
Mr. Frank Parker, III, the plaintiffs’ own expert in the field of industrial hygiene, also discussed the employer’s non-delegable duties under the Walsh Healey Act adopted in the 1950s and OSHA regulations adopted in 1970. He further testified that in 1952 the Louisiana Legislature recognized the potential dangers of asbestos exposure and made asbestosis a com-pensable claim under the Louisiana Worker’s Compensation Act. Especially in light of the change in the law governing worker’s compensation and the OSHA regulations requiring compliance by employers whose employees were exposed to asbestos, Placid Oil had a duty to know and at the very least should have known of the dangers of asbestos exposure, both as an émployer as ■well as the owner/operator of an oil and gas refinery and facility known to contain asbestos. Yet no notice, warnings or proper procedures were put in place to protect Placid Oil’s workers or their lanfamilies. Placid Oil was certainly a “sophisticated user” of the machinery at its plant, having participated in the design and construction of the plant, including specifically the placement and use of the large Ingersoll-Rand compressors that were vital to the plant’s operation,, with seventeen (17) turbo chargers insulated *1119 with asbestos and with thirty asbestos gaskets on each.
The testimony of Mr. Bill Frazier, plaintiffs eoworker who worked for Placid Oil from 1967 until about 1980, confirmed that he and the other workers' were never warned by Placid Oil of the known dangers of asbestos exposure at any'formal safety meetings or otherwise. Mr. McLeod, the supervisor in charge, made that point clear in his testimony. Though required by OSHA regulations, Placid Oil workers were not issued company coveralls or uniforms and wore their own clothes to work and back home after work. The workers were never instructed that they should change their clothes or take showers before leaving work at the Placid Oil facility. The levels of asbestos exposure were never monitored by either workers' or ■ supervisors, and the workers were never issued or told to wear respirators when working around asbestos insulation. No warnings were given to family members of the workers about the potential for secondary asbestos exposure from the employees and their work clothes.
Mr. Williams testified in like ihariner at trial, as did Jimmy Williams, Jr. The evidence was uncontradicted that 'Mrs. Williams personally laundered all of her husband’s work clothes and was given no warnings whatsoever by Placid Oil.
Ingersoll-Rand cites Warren v. Sabine Towing and Transp. Co., Inc., 01-573 (La. App. 3 Cir. 10/30/02), 831 So.2d 517, writs denied, 02-2926, 02-2927, 022936 (La. 2/14/03), 836 So.2d 116, 117, as supportive of its position that its apportionment of fault should be reduced to no more than 50% in the wrongful death claim. In Warren, as in this case, a survival action and wrongful death action were tried over the decedent’s battle with acute myelogenous leukemia as a result |R1of alleged exposure to benzene during his employment. After a bench trial, the trial court assigned 33% fault to the employer and the balance to other entities in the survival action. In the wrongful death action, no fault was assigned to the employer. In a well-reasoned decision, this court reversed and found the employer liable for 40% of fault in both the survival action and wrongful death action.
Louisiana Civil Code article 2323(A) governs the application of comparative fault for a wrongful death claim and states:
A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a non-party, and regardless of the person’s insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person’s identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss 'as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss. (Emphasis added.)
Placid Oil should be assigned a fifty (50%) percent virile share of the fault in the wrongful death action and it was manifestly erroneous for the trial judge to fail to do so. Based on the entire record before us, the evidence is clear and it is uncontra-dicted, having come from plaintiffs’ own experts and witnesses, that Placid Oil had the requisite actual knowledge of the dangers of asbestos exposure to Mr. Williams, especially in the compressor room, failed to exercise reasonable care to prevent Mr. Williams and his spouse from hazardous exposure to asbestos, and thus should be *1120 held liable for a 50% virile share of the wrongful death damages, along with Inger-soll-Rand, pursuant to La.Civ.Code art. 2317.1. At the very least, Placid Oil “should have known” of the asbestos hazards and did nothing to warn its employees and their families. Since Placid Oil has been released in ^bankruptcy,[10] its virile share of liability must be offset in the judgment against Ingersoll-Rand under La.Civ.Code art. 2323(a), just as was done in the survival action.
QUANTUM
The quantum, awards in this case are likewise reviewed under the manifest error “clear abuse of discretion” standard as stated in the Louisiana Supreme Court decision in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La. 1993), and Hayes, 193 So.3d 1110. Ingersoll-Rand also appealed the trial judge’s decision to award each of the four adult children of Myra Williams $750,000.00 in wrongful death damages for the loss of their mother.[11] Ingersoll-Rand did not appeal the amount of the $3,000,000.00 survival damages award brought by Mr. Williams and the adult children for Myra Williams’ pre-death suffering, or the amount of the $1,000,000.00 wrongful death award to Mr. Williams.
I would find that the $750,000.00 wrongful death award to each of the adult children is manifestly erroneous, especially in light of the generous survival action damages which Mr. Williams and the four children inherited after Ms. Williams’ death. The wrongful death award to the adult children is three times the average award in cases of this type, as discussed in detail in Ingersoll-Rand’s brief.[12] While I agree with plaintiffs’ counsel that damages should be set individually and not by simply reviewing “average” awards, and that many of the awards in the $250,000.00 range for wrongful death damages for adult children are somewhat dated and would be higher in today’s dollars, I would find that awarding damages |aato adult children by a factor of three times the average of most previous awards affirmed in the jurisprudence is a leap too far and too fast.
I agree with counsel for Ingersoll-Rand that the adult children cannot recover for their own mental anguish as they watched their mother suffer and die. The adult children have no right under the law to sue for such a claim, absent circumstances not present here.[13] Much of their trial testimony focused on that issue. As previously stated, the adult children have already inherited, along with their father, the generous $3,000,000.00 survival damage claim of their mother for her own pre-death suffering.
The wrongful death claim accrues at the moment of death and is intended to compensate for the suffering of the named beneficiaries after the decedent’s death.[14] *1121 In its reasons for judgment on the issue of the adult children’s’ wrongful death damages, the trial judge said only:
Every child testified that Ms. Williams was the center of their universe. She woke them each morning with a cup of coffee and a smile while growing up. She was there when their children were born. She kept her grandchildren every day. She cooked supper every night and everyone congregated at her home even after they were grown and had moved out. The court awards each child $750,000.00 for the wrongful death of their mother.
The elements of damages in the wrongful death claim at issue here are loss of love and affection, companionship, guidance and loss of services.[15] Funeral expenses are recoverable but were not mentioned by the trial court and do not appear to be an issue on appeal.
While I agree with esteemed counsel for plaintiffs that these adult children each had a very close and loving relationship with their mother and are entitled to a fair and just award, I would find that the award of $750,000.00 to each in this case 1 ¡¡4is unreasonably high, is not supported by the record and is manifestly erroneous. While respecting the enormity of their loss and the emotional pain each continues to experience, after reviewing the entirety of the testimony of each, as well as all the evidence in the record on this issue, I would hold that the highest award that is reasonably supported by the evidence in the record is $500,000.00 to each of the adult children.[16]
CONCLUSION
I would affirm the trial judge’s finding that Ingersoll-Rand and Placid Oil are each 50% at fault in the survival claim, and that Ingersoll-Rand is entitled to a virile share credit for Placid Oil’s fault in the survival action. I would reverse the trial judge in the wrongful death claim and assess a 50% virile share fault to Placid Oil and 50% virile share to Ingersoll-Rand in the wrongful death claim. I would reduce the quantum award in the wrongful death claim to $500,000.00 to each of the four adult children. I would assess 50% of the costs of appeal to plaintiffs and 50% to Ingersoll-Rand. In all other respects, I would concur with the majority to affirm the trial judge’s decision.
Savoie, J., concurs in part, dissents in part, and assigns reasons.
IsJn connection with the survival action, I concur with the majority’s opinion affirming the trial court’s allocation of 50% of the fault to Ingersoll-Rand and 50% of the fault to Placid Oil. I also concur with the majority’s opinion as to quantum. However, I respectfully dissent from the majority’s opinion inasmuch as it affirms the trial court’s allocation of 100% fault to Ingersoll-Rand in connection with the wrongful death claim.
With respect to the wrongful death claim, I agree that the law applicable to the wrongful death claim is the law in effect at the time of Mrs. Williams’ death[17] *1122 , and therefore La. Civ.Code art. 2317.1[18] and principles of comparative fault are applicable in determining Ingersoll-Rand’s liability. However, I would ñnd the trial court manifestly erroneous in failing to allocate any percentage of fault to Placid Oil. The deposition testimony" of Prenitiss McLeod, a Placid Oil plant supervisor con-" clusively establishes that Placid Oil had knowledge at the time Mr. | .^Williams worked in the compressor room in the 1970’s that the Ingersoll-Rand compressors contained asbestos. The record is further replete with evidence establishing that Placid "Oil knew, or should have known, of the potential of secondary asbestos exposure from its /employees’ work clothes[19], yet it failed to provide adequate warnings or protections. Therefore, Placid Oil should have been allocated a percentage of fault.
When there is a finding that the trial court erred in apportioning fault, the fault allocation should be adjusted “only to the extent of lowering or raising it to the highest or lowest point respectively which is reasonably within the trial court’s discretion.” Clement v. Fry, 95-1119, pp. 7-8 (La. 1/16/96), 666 So.2d 607, 611. Because of the testimony suggesting that Ingersoll-Rand provided no warnings whatsoever with respect to its compressors that were installed at Placid Oil, it is my opinion that 25% of the fault is the lowest reasonable percentage of fault that the trial court could have allocated to Placid Oil, and therefore, I would reduce Ingersoll-Rand’s liability for the wrongful death claim to 75%.

. Landry v. Avondale Industries, Inc., 03-3432 (La. 7/2/04), 877 So.2d 970.

. See Landry, 877 So.2d 970; Walls v. American Optical Corp., 98-0455 (La. 9/8/99), 740 So.2d 1262.

. Damage caused by ruin, vice, or defect in things. The owner or custodian of a thing is answerable for damages occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case. Added by Acts 1996, l?t Ex.Sess., No. 1, § 1, eff. April 16, 1996.

. A sophisticated user is defined as one who is "familiar with the product,” Hines v. Remington Arms Co., Inc., 94-455, p. 10 (La. 12/8/94), 648 So.2d 331, 337, or as one who "possesses more than a general knowledge of the product and how it is used.” Asbestos v. Bordelon, Inc., 96-525, p. 44 (La.App. 4 Cir. 10/21/98), 726 So.2d 926, 955. As a result of their familiarity with a product, sophisticated users are presumed to know the dangers presented by the product; hence, there is no duty to warn them. Hines, 648 So.2d 331.

. See plaintiffs’petition paragraphs 17-24.

. In Re Placid Oil Co. Bankruptcy No. 86-33419-SGJ-11. Adversary No. 09-03356-SGJ, 463 B.R. 803 (2012).

. Mrs, Williams was 59 when she died on August 9, 2003. The names and ages of her adult children when she died were: Jimmy Sloan Williams, age 40, Dalton Glen Williams, age 37, Jeanette Williams Shows, age 35, and Gwen Williams Hernandez, age 26.

. See e.g., Thomas v. A.P. Green Indus. Inc., 2005-1064 (La.App. 4 Cir. 5/31/06), 933 So.2d 843; Roberts v. Owens-Corning Fiberglass, 2003-0248 (La.App. 1 Cir. 4/2/04), 878 So.2d 631; Mathieu v. DOTD, 598 So.2d 676 (La. App. 3 Cir. 1992); Warren v. Sabine Towing, 2001-0573 (La.App. 3 Cir. 10/30/02), 831 So.2d 517; Talbert v. Evans, 2011-1096 (La. App. 4 Cir. 3/7/12); 88 So.3d 673.

. La.Civ.Code art. 2315.6.

. Barbara Raymond v. Gov. Employees Ins. Co., 09-1327 (La.App. 3 Cir. 6/2/10), 40 So.3d 1179, writ denied, 10-1569 (La. 10/8/10), 46 So.3d 1268.

. Wanda Baker Smith, et al. v. The Municipality of Ferriday, 05-755 (La.App. 3 Cir. 2/1/06), 922 So.2d 1222, writ denied, 06-934 (La. 9/29/06), 937 So.2d 860.

. In Chaisson v. Avondale Indus., Inc., 05-1511 (La.App. 4 Cir. 12/20/06); 947 So.2d 171, an award of $562,000.00 each for two adult children was affirmed with the comment that the award was "a little higher than some previous awards”. And in Oddo v. Asbestos Corp., 04-0004 (La App. 4 Cir., 8/20/15), 173 So.3d 1192, a $600,000.00 jury award for each of two adult children was not challenged on appeal. Though $750,000.00 wrongful death damages to each child was affirmed by our court in Raymond, supra, that case involved four minor children and not adult children as here.

. See, Walls v. American Optical, 98-455 (La. 9/8/99), 740 So.2d 1262; See also, Cole v. Celotex, 599 So.2d 1058 (La.1992).

. La.Civ.Code art. 2317.1 states in part;
The owner or custpdian of a thing is answerable for damage occasioned fay its ruin, vice, or defect, only upon a showing that he knew or, in the' exercise of reasonable care, should have known of the ruin, vice, or defect which caused tire damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

. See for example, the testimony of Plaintiff’s expert in industrial hygiene, Frank Parker, III, who indicated that OSHA regulations pertaining to asbestos became effective in 1970 or 1971, and that "the regulations required “steps to be taken by an. employer to protect its employees from potential exposure to asbestos[,]’’ including periodic employee monitoring, protocols to prevent or limit exposure to asbestos, and requiring that ‘-'work clothes” and “street clothes” be kept separate, etc, Mr. Parker also testified that as of approximately. 1952, asbestosis was a com-pensable disease under workers’ compensation laws. Similarly, Plaintiffs’ pathology expert, Dr, Roggli, testified as to the enactment of OSHA regulations in 1970 or 1971 that alerted everyone to the dangers of asbestos. Additionally, Mr, McLeod testified as to his knowledge of OSHA regulations concerning asbestos in the 1970’s,